UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| **LEON MCDONALD #293623** | **CASE NO. 3:20-CV-01388 SEC P** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **JERRY GOODWIN** | **MAG. JUDGE KAYLA D. MCCLUSKY** |

## REPORT AND RECOMMENDATION

Leon McDonald, an inmate in the custody of Louisiana's Department of Corrections proceeding pro se and in forma pauperis, filed this Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 on approximately October 21, 2020. [doc. # 1]. He attacks his aggravated-battery conviction, his possession-of-a-firearm-by-a-convicted-felon conviction, and the resulting sentences imposed by the Fourth Judicial District Court, Ouachita Parish.[1] For reasons below, the undersigned recommends that the Court deny Petitioner's claim and dismiss his Petition.

## Background

The Louisiana Court of Appeal for the Second Circuit recounted the underlying state court procedural history as follows:

> On the evening of January 16, 2015, Frozenia McGee and her daughter, Tracy McGee, were sitting on the front porch of their residence at 109 South Nineteenth Street in Monroe, Louisiana. Joseph Wright, Frozenia's former boyfriend, joined them, and they were drinking and listening to music.
>
> A next-door neighbor, Dwight Amphy, came home from work at approximately 4:00 p.m. and saw Wright on, or near, the porch of the McGee resident. Approximately one half-hour later, Amphy was outside on his own porch when he saw a gray Chevrolet arrive at the McGee residence. Amphy and Wright did not know the driver of the vehicle, but Frozenia and Tracy identified him as Defendant. The passenger was originally identified only by the street name of Peanut; however, he was later identified by his given name of Walter Fuller. Amphy recognized both men as having been at the McGee

---

[1] This matter has been referred to the undersigned for review, report, and recommendation under 28 U.S.C. § 636 and the standing orders of the Court.

residence on prior occasions. The two men joined Frozenia, Tracy and Wright on the porch.

Amphy went back inside his home after the arrival of Defendant and Peanut, but a short time later, heard arguing next door and looked outside. Amphy observed Peanut and Wright arguing near the street. Wright tried to leave the property, but Peanut began striking him with a stick. Wright fell to the ground and Peanut continued to strike him. Defendant returned to the vehicle and retrieved a gun, stood over Wright and shot him in the ankle as he attempted to crawl away. Peanut and Defendant left the scene in the gray Chevrolet when Amphy yelled that he was calling the police.

Cpl. Colette Major was the first Monroe Police Department officer to arrive at the scene. She observed Wright lying partially on the grass and partially in the roadway. His ankle was bloody, his foot looked twisted and he was moaning. Wright told Cpl. Major that he did not know the man who shot him, but that he knew the other man by his street name of Peanut. After ensuring that Wright received medical attention, Cpl. Major began taking statements from witnesses. Amphy's statement was taken and then she attempted to interview Frozenia, who was not cooperative and smelled strongly of alcohol.

Det. Dwayne Crowder of the Monroe Police Department responded to the hospital where Wright was transported, and the investigation was turned over to him. While Wright received medical care, Det. Crowder returned to the scene to speak with witnesses. Frozenia provided Defendant's name to him. Wright later identified Defendant as the shooter from a photo lineup. An arrest warrant for Defendant was obtained and executed.

Defendant was charged by bill of information with aggravated second degree battery and possession of a firearm by a convicted felon. The bill of information indicates that, as to Count 2, Possession of a Firearm by a Felon, in violation of La. R.S. 14:95.1, Defendant had previously pled guilty on December 14, 2010, in Docket No. 10–F2121, Fourth Judicial District Court, Ouachita Parish, to the crime of distribution of Phencyclidine ("PCP"), a Schedule II drug.

A motion to revoke Defendant's probation in Docket No. 10–F2121 was filed, and a hearing was held on April 27, 2016. His probation officer, identified in the record only as Mr. Turnbull, appeared and testified that Defendant's conviction in December 2010 had been for two counts of distribution of PCP and illegal carrying of a weapon. He recited Defendant's various violations of his probation, which included a failure to report for many months and failure to pay agreed-to fees in his conditions of probation. Mr. Turnbull also testified that Defendant had been released on September 25, 2012, and that his probation was to expire on September 25, 2017.

The trial court found sufficient grounds to revoke Defendant's probation based on the new charges against him, ordered the probation revoked and imposed the original sentences with credit for time served.

A jury trial was held, at which Frozenia and Tracy McGee, Amphy, Wright, Cpl. Major and Det. Crowder testified to the facts set forth hereinabove. Defendant was convicted of the responsive verdict of aggravated battery and found guilty as charged of possession of a firearm by a convicted felon.

*State v. McDonald*, 51,468 (La. App. 2 Cir. 8/9/17), 243 So. 3d 1188, 1188–90, *writ denied*, 2017-1574 (La. 6/1/18), 243 So. 3d 571.

On August 25, 2016, the trial judge sentenced Petitioner to ten years at hard labor for aggravated battery and to seventeen years at hard labor for possession of a firearm by a convicted felon. [doc. # 5, p. 63].

Petitioner appealed, claiming that his sentences were excessive, that the trial court failed to state its reasons for imposing consecutive sentences, and that the trial judge failed to delay sentencing under LA. CODE CRIM. PROC. ART. 873. *State v. McDonald*, 243 So. 3d at 1192. On August 9, 2017, the Louisiana Second Circuit Court of Appeal affirmed Petitioner's convictions and sentences. *Id.* On June 1, 2018, the Supreme Court of Louisiana denied Petitioners application for writ of certiorari and/or review. *State v. McDonald*, 243 So. 3d 571 (La. 2018). Petitioner did not seek further review before the United States Supreme Court. [doc. # 1, p. 3].

On approximately March 4, 2019, Petitioner applied for post-conviction relief before the trial court. [doc. #s 5, p. 11; 14-4, p. 45]. He claimed that he was arraigned before the bill of information was filed, that his trial counsel rendered ineffective assistance, and that the State withheld favorable evidence. [doc. # 5, p. 11]. On April 3, 2019, the trial court denied Petitioner's application. [doc. # 1, p. 37]. Petitioner appealed, apparently raising the same three claims, [doc. # 5, p. 79], and on July 3, 2019, the appellate court denied his writ "on the showing made." [doc. # 1, p. 36]. Petitioner sought further review before the Supreme Court of Louisiana, [doc. # 5, p. 88], and on August 14, 2020, the court denied the application. *State v. McDonald*, 300 So. 3d 847 (La. 2020).

Petitioner filed this Petition on approximately October 21, 2020, raising the same three claims he raised before the state courts on post-conviction review. [doc. # 1, pp. 1-33]. Respondent filed an answer on February 3, 2021, submitting that Petitioner has exhausted his

3

state court remedies, has presented claims cognizable on federal habeas review, and has timely filed his habeas petition. [doc. # 14, p. 4-5]. However, Respondent asserts that Petitioner has not demonstrated that any of his claims have been adjudicated in state court proceedings which resulted in: "(1) a decision that was contrary to, or involved an unreasonable application of , clearly established federal law as determined by the Supreme Court of the United States; or (2) a decision that was based on an unreasonable determination of facts in light of the evidence presented in state court proceedings." [doc. # 14, p. 4]. Further, Respondent denies that Petitioner has rebutted any factual determination made by a state court by clear and convincing evidence. [doc. # 14, p. 4]. Petitioner filed a reply brief on March 5, 2021. [doc. # 16]. Accordingly, this matter is ripe.

## Law and Analysis

### I. Standard of Review

*Habeas corpus* relief is available to a person who is in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254. Under 28 U.S.C. § 2254(d), this court must give deference to a state court decision for "any claim that was adjudicated on the merits in State court proceedings" unless the decision was either "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or the decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2).

A decision is "contrary to" clearly established Federal law "'if the state court arrives at a conclusion opposite to that reached by . . . [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts.'" *Williams v. Taylor*, 529 U.S. 362, 413 (2000); s*ee also Hill v. Johnson*,

210 F.3d 481, 485 (5th Cir.2000), *cert. denied,* 532 U.S. 1039 (2001). An "unreasonable application" of clearly established federal law is one in which "the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. "The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable[.]" *Bell v. Cone*, 535 U.S. 685, 694 (citing *Williams,* 529 U.S. at 409–410) ("[W]e stressed in *Williams t*hat an unreasonable application is different from an incorrect one.").

Section 2254(d)(2) also allows for habeas relief if the state court's decision "was based on an unreasonable determination of the facts" in light of the record before it. The federal court "may not characterize these state-court factual determinations as unreasonable 'merely because [we] would have reached a different conclusion in the first instance.'" *Brumfield v. Cain*, 576 U.S. 305, 313–14 (2015) (quoting *Wood v. Allen*, 558 U.S. 290, 301 (2010)). "Instead, § 2254(d)(2) requires that we accord the state trial court substantial deference." *Id.* at 314. However, the petitioner may overcome the presumption of correctness "by clear and convincing evidence." *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (citing 28 U.S.C. § 2254(e)(1)).

II. **Analysis of Claims**

A. **Claim One: Arraignment on the Bill of Information**

In Claim One, Petitioner asserts that he was never arraigned on the bill of information filed on August 14, 2015, and, thus, there was no valid arraignment, trial, or conviction. However, "[v]acating convictions for lack of formal arraignment proceedings is predicated on the existence of possible prejudice." *United States v. Rogers*, 469 F.2d 1317, 1317–18 (5th Cir. 1972)(citing *Garland v. Washington*, 232 U.S. 642, 646 (1914)) (other citations omitted). Thus, the issues are Petitioner's right to know of the charges and his right to prepare an adequate defense, "rights which might be prejudiced by the lack of formal charge and entry of plea until

5

the beginning of trial proceedings." *Rogers*, 469 F.2d at 1318 (citing *Dell v. Louisiana*, 468 F.2d 324 (5th Cir. 1972); *see also Parker v. 24th Jud. Dist. Ct.,* No. CIV.A. 06-10551, 2007 WL 2893852, at *7 (E.D. La. Sept. 27, 2007) ("It is well established that a formal arraignment is not constitutionally required under federal law if, as here, it is clear that the defendant knew what he was accused of and was able to defend himself adequately.") (citing *Dell*, 468 F.2d at 325).

In *United States v. Rogers,* the Fifth Circuit held that where an appellant had not alleged that he was ignorant of the offense with which he was charged or that he was hindered in the preparation of a defense, the record indicated a lack of prejudice to the appellant. *Id.* There, the appellant's retained counsel moved before trial to suppress evidence, to produce minutes of grand jury testimony of government witnesses, and for a bill of particulars. *Id.* Throughout the proceedings, the appellant manifested his intention to assert innocence. *Id*. Thus, the Fifth Circuit reasoned that the record indicated a lack of prejudice resulting from the technical lack of formal arraignment proceedings and appellant did not show otherwise, and the conviction was affirmed. *Id*.

Due process does not require a formal arraignment and plea. *Garland v. Washington*, 232 U.S. 642, 646 (1914). The right to a formal arraignment can be waived. Under Louisiana Code of Criminal Procedure Article 555:

> Any irregularity in the arraignment, including a failure to read the indictment, is waived if the defendant pleads to the indictment without objecting thereto. A failure to arraign the defendant or the fact that he did not plead, is waived if the defendant enters upon the trial without objecting thereto, and it shall be considered as if he had pleaded not guilty.

LA. CODE CRIM. PROC. ART. 555. Furthermore, a waiver of the right to a formal arraignment can be implied. *Thomas*, 455 F.2d at 470 (quoting *Garland*, 232 U.S. at 646)("[a] waiver ought to be conclusively implied where the parties had proceeded as if defendant had been duly arraigned,

and a formal plea of not guilty had been interposed"). For example, in *Thomas v. United States*, the Fifth Circuit held that a waiver of formal arraignment was implied where a petitioner's plea of not guilty resulted in a full-blown trial. *Id.* Although the verdict was reversed on appeal based on an inadequate instruction to the jury, a second trial was held and petitioner unsuccessfully appealed a second time, failing to raise the lack of formal arraignment proceedings in the second trial as an issue. *Id.* The Court reasoned that "[i]t is too late in the day for [petitioner] to turn his back upon the course of action he entered upon when he pleaded not guilty and began a long series of efforts to disprove his guilt." *Id.; see also Dixon v. Balkcom*, 614 F.2d 1067, 1069 (5th Cir. 1980) (holding that where the record contained a formal waiver of arraignment signed by appointed counsel, and counsel testified that the document was signed by authority of appellants, the record supported the state court's conclusion of waiver).

Here, Petitioner waived formal arraignment proceedings by entering upon the trial without objecting to the failure to formally arraign. LA. CODE CRIM. PROC. ART. 555. During the arraignment proceedings on August 13, 2015, the prosecutor noted that a second count of Possession of a Firearm by a Convicted Felon had been added to the bill of information. [doc. # 14-1, p. 169-70]. By clerical error, the bill of information was not filed into the record until the next day. However, Petitioner did not object to the arraignment proceedings at any point prior to his trial; Petitioner raised the issue of formal arraignment only after he had been convicted by a jury. [doc. # 14-3, p. 246]. Under both Fifth Circuit and Supreme Court precedent, Petitioner cannot now raise the issue of the lack of formal arraignment proceedings.

Further, even if he could now raise this procedural argument, Petitioner cannot demonstrate that he was prejudiced by the lack of formal arraignment. Petitioner has never claimed that he lacked knowledge of the charges against him. Rather, he claims that, because he did not formally enter his plea of "not guilty" (i.e. his not guilty plea was invalid because he was

7

not formally arraigned), he was somehow unable to enter a plea of "not guilty by reason of insanity." [doc. #1, pp. 19-20]. However, contrary to his assertions, under the Louisiana Code of Criminal Procedure, Petitioner could have moved to change his plea of not guilty to a plea of not guilty by reason of insanity for good cause at any time before the commencement of the trial. *See* LA. CODE CRIM. PROC. ART. 561. He failed to do so. Instead, he consistently maintained his innocence throughout the proceedings, and he has suffered no resulting prejudice from any procedural error in state court. Accordingly, Petitioner's Claim One should be denied.

### B. Claim Two: Ineffective Assistance of Counsel

In Claim Two, Petitioner asserts that he is entitled to relief because his counsel was ineffective at trial. The Sixth Amendment guarantee of effective assistance of counsel to criminal defendants is denied when a defense attorney's performance falls below an objective standard of reasonableness and thereby prejudices the defense. *Yarborough v. Gentry*, 540 U.S. 1, 5 (2003). The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). First, Petitioner must show that counsel's performance was deficient: that is, "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. Second, Petitioner must show that the deficient performance prejudiced the defense. *Id.* "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Id.* at 687.

The "standard for attorney performance is that of reasonably effective assistance." *Id.* (citing *Trapnell v. United States*, 725 F.2d 149, 151-52 (2d Cir. 1983)). In each case, the convicted defendant claiming ineffective assistance "must identify the acts or omissions of

8

counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690. The court must then consider under "all the circumstances" whether the identified acts or omissions were outside the wide range of professionally competent assistance." *Id.* "In making that determination, the court should keep in mind that counsel's function . . . is to make the adversarial testing process work," but recognizing "that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.*

Here, Petitioner claims that his counsel did not prepare an adequate defense. However, his counsel filed several motions on his behalf, including, but not limited to, a motion to preserve evidence, a motion for *Brady* evidence, motion for discovery, and a motion in limine. *See, e.g.,* [doc. # 14-1, p. 78-79, 82, 87-97, 106-07]. Counsel also made objections and conducted cross examination of several of the State's witnesses. [doc. # 14-3, p. 79]. Although Petitioner points out alleged inconsistencies in testimony among the eyewitnesses, his counsel highlighted the alleged inconsistencies to the jury in his closing statements. [doc. 14-3, p. 225]. It was the jury who heard all the testimony and concluded that the evidence supported a conviction.

Petitioner further asserts that his counsel was ineffective because the State did not present the weapon, the victim's medical records, or an expert witness to testify that he shot the victim, and his counsel failed to demand that the State do so. While the undersigned cannot conclude that such failure was ineffective performance, rather than trial strategy, Petitioner has not demonstrated prejudice on the basis of this alleged failure. Eyewitness testimony alone can be sufficient evidence to support a conviction of aggravated battery, even where the State does not produce physical evidence, such as the weapon itself. *See, e.g., State v. Dussett*, 2013-0116, p. 7 (La. App. 4 Cir. 10/2/13); 126 So. 3d 593, 598, *writ denied*, 2013-2559 (La. 4/11/14), 137 So. 3d 1214 (upholding a conviction of aggravated battery where the State did not produce the weapon

and instead presented eyewitness testimony). "Positive identification by only one witness is sufficient to support a conviction." *Id.* (quoting *State v. Hughes*, 2005–0992, pp. 5–6 (La.11/29/06), 943 So.2d 1047, 1051). "Appellate courts will not second-guess the credibility determinations of the fact finder beyond the constitutional standard of sufficiency." *Id.* (quoting *State v. Dorsey*, 2010–0216, p. 43 (La.9/7/11), 74 So.3d 603, 633–634, *reh'g denied* (10/21/11), *cert. denied*, 566 U.S. 930 (2012)). Here, the jury evaluated the eyewitness testimony from several witnesses and found Petitioner guilty; there is nothing to suggest that counsel demanding the weapon, medical records, or expert testimony would have changed the jury's finding or that this evidence would even be helpful to Petitioner's case. Accordingly, counsel's failure to demand that the State present evidence of the weapon or the victim's medical records or to present expert testimony does not constitute ineffective assistance.

Finally, Petitioner alleges that counsel was ineffective because he prepared an intoxication defense but later withdrew it for lack of a factual basis. However, Petitioner has failed to demonstrate that counsel's trial strategy amount to deficient performance or that any prejudice resulted from counsel's assertion and subsequent withdrawal of the defense. Accordingly, Petitioner's Claim Two should also be denied.

### C. Claim Three: Evidence Withheld by the State

Finally, in Claim Three, Petitioner asserts a *Brady* violation. The Supreme Court has held that it is a constitutional violation for a prosecutor to suppress material evidence favorable to the defense. *Brady v. Maryland*, 373 U.S. 83 (1963). To prevail on a *Brady* claim, Petitioner must establish that: "(1) the state withheld evidence, (2) the evidence was favorable to the accused, and (3) the evidence is material to guilt or punishment." *DiLosa v. Cain*, 279 F.3d 259, 262-63 (5th Cir. 2002)(citing *United States v. Bagley*, 473 U.S. 667, 674 (1985). Here, Petitioner claims that the State withheld an electronically recorded statement it relied on in its probable

10

cause affidavit. However, Petitioner has not even alleged that this evidence was favorable to him nor that it was material to his guilt or punishment. Accordingly, Petitioner's Claim Three should also be denied.

## Conclusion

For the foregoing reasons,

IT IS RECOMMENDED that Petitioner Leon McDonald's Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 [doc. # 1] be DENIED and this case DISMISSED WITH PREJUDICE.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this Report and Recommendation have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy of any objections or response to the District Judge at the time of filing. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before the Judge makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE**.

Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, this Court must issue or deny a certificate of appealability when it enters a final

order adverse to the applicant. Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals.  **Within fourteen (14) days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue.**  See 28 U.S.C. § 2253(c)(2).  **A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.**

      THUS DONE in Chambers on this 26th day of April, 2021.

                                                          KAYLA DYE MCCLUSKY
                                          UNITED STATES MAGISTRATE JUDGE